| | |
|---|---|
| GORDON T. DAVIS,<br><br>      Plaintiff,<br><br>      v.<br><br>CITY OF WORCESTER<br>MASSACHUSETTS, et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.<br>)    24-cv-40151-DHH |

## ORDER

**June 3, 2025**

**Hennessy, M.J.**

Before the Court are Defendants the City of Worcester, Kathleen M. Toomey, Eric Batista, and Michael E. Traynor's motion to dismiss and pro se Plaintiff Gordon Davis' motion to grant locus standi. Dockets # 16, 17. The parties each filed oppositions to the others' motion. Dockets # 26, 29. These matters are now ripe for adjudication. For the reasons that follow, the Court grants Defendants' motion to dismiss and denies Davis' motion to grant locus standi.

## I.  BACKGROUND

Plaintiff Gordon Davis, a resident of Worcester, Massachusetts, is Black and has "lived in the Black community for over fifty-six (56) years." Docket # 14. Davis named the City of Worcester, Massachusetts ("the City"), Worcester City Councilor Kathleen M. Toomey ("Toomey"), Worcester City Manager Eric D. Batista ("Batista"), and Worcester City Solicitor Michael E. Traynor ("Traynor") as Defendants in this action. Id. Davis alleges the Defendants violated federal law because they failed to adequately respond to Davis' petitions to the City

Council requesting the City "investigate and fix the Systemic Racism" in Worcester.  Id. at ¶¶ 1-3.  Davis' petitions were filed after results from an equity audit published in 2023 revealed that the Worcester Police Department ("WPD") made arrests in Black and Latino communities at a disproportionately higher rate than in comparator communities.[1]  Id. at ¶ 1.

Davis alleges that on three occasions[2] he filed petitions with the City Council, requesting the City "investigate and fix the Systemic Racism found in the City" that "harm[s] people in the Black and Latino communities" and "fix violations of Civil Rights."  Id. at ¶¶ 3, 6-7.  Davis claims that in each instance, the Defendants ignored the petitions or failed to take the action sought in the petitions.  Id. ¶¶ 3, 6-8.  Davis alleges that in response to his first petition, which asked the City Council to order City Manager Batista to investigate and fix the issue of systemic racism in the WPD, the City Council "filed" the petition which resulted in the City Council taking no action on the petition.  Id. at ¶ 3.  The second petition, which asked the City Council Standing Committee on Safety to investigate and create a policy that would end the systemic racism evidenced in WPD's arrest data, was approved by a majority of the City Council, but was then tabled by Councilor Toomey, who referred to the petition as "flawed."  Id. at ¶ 6.  Davis' third petition sought to "effectuate" the second petition on the ground that by operation of City Council procedure, the second petition should have been automatically resurrected a week after it was tabled.  Id. at ¶¶ 7-8.  Solicitor Traynor did not permit the third petition to go to the City Council because Traynor determined that Councilor Toomey had not tabled the second petition under the individual councilor privilege, which permits a petition to be tabled for no more than one week.  Id. at ¶¶ 8-9.  Davis contends that Traynor's decision is in violation of City Council

---

[1] Davis notes that a Department of Justice report came to the same conclusion and Worcester Police Chief Soucier "admitted that the Systemic Racism described in the report is harming the Black and Latino individuals and communities."  Docket # 14 ¶¶ 1-2.

[2] Davis fails to include the date any of the petitions were filed or considered by the City Council.

rules and is contradicted by the City Clerk's records indicating Toomey tabled Davis' petition under the individual councilor privilege.  Id.

Davis also alleges that Batista ignored Davis' requests for community hearings and failed to provide police records to the Worcester Commission for Human Rights, which is responsible for investigating WPD's arrest records.  Id. at ¶¶ 4-5.  He also claims that Traynor was previously involved in "at least one other racist incident" and that the City refused to release a report on this incident.  Id. at ¶ 10.

In the instant suit, Davis claims, pursuant to 42 U.S.C. § 1983, that the City violated the Equal Protection Clause of the Fourteenth Amendment (Count I), and that Batista, Toomey, and Traynor violated 18 U.S.C. § 24 (Counts II, III, and IV, respectively).[3]  Defendants' motion to dismiss argues Davis lacks standing to seek injunctive relief, the complaint fails to state a claim, there is no civil cause of action for Davis' claims against the individual Defendants, and immunity doctrines shield the individual Defendants from suit.  Docket # 17.

In his motion to grant locus standi, Davis asks the Court to "grant him standing based on real (concrete) harm and specificity."  Docket # 16 at ¶ 1.  In support of his argument, Davis provides that "in the past" he was "stopped without probable cause by Officer James Reardon" who charged Davis with disorderly conduct and which charge was later dismissed.  Id. at ¶ 5. After this arrest Davis experienced emotional distress.  Id. at ¶ 6.  He also alleges that the civil rights violations perpetuated by the City have "an adverse effect on the emotional health of the Black and Latino communities" and on Davis.  Id. at ¶ 7.  Davis' motion otherwise repeats and realleges the allegations included in the amended complaint.

---

[3] 18 U.S.C. § 24 is titled and comprises Definitions Relating to Federal Health Care Offense.  As suggested by Defendants in their motion to dismiss, Docket # 18 at 15-16, Davis likely intended to cite 18 U.S.C. § 242, which makes it a crime to deprive a person of constitutional and legal rights under color of law.

## II.  STANDARD

Defendants have moved to dismiss the instant action on the grounds that: Davis lacks standing; the amended complaint fails to state a claim; and, the individual Defendants are entitled to immunity.  "Since federal courts are courts of limited jurisdiction . . . this court must be assured of its jurisdiction before reaching the merits of Plaintiffs' claims."  <u>Gary v. Dynatrace, Inc.</u>, 747 F. Supp. 3d 245, 248 (D. Mass. 2024).  Article III of the Constitution limits this Court's jurisdiction to cases and controversies.  "To state a case or controversy under Article III, a plaintiff must establish standing."  <u>Arizona Christian Sch. Tuition Org. v. Winn</u>, 563 U.S. 125, 133 (2011).  As the party invoking federal jurisdiction, Davis bears the burden of establishing standing.  <u>Gary</u>, 747 F. Supp. 3d at 248.  And a plaintiff must establish standing for each form of relief sought.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 109 (1983).

The minimum constitutional requirements of standing are injury in fact, causation, and redressability.  <u>Arizona Christian Sch. Tuition Org.</u>, 563 U.S. at 134.  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical."'"  <u>Id.</u> (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).  The injury in fact must be "fairly . . . traceable to the challenged action of the defendant," and it must be likely that the plaintiff's injury will be redressed by a decision in the plaintiff's favor.  <u>Id.</u>  In suits seeking injunctive relief, a plaintiff must plausibly allege that "the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur."  <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158 (2014) (quoting <u>Clapper v. Amnesty Int'l</u>, 568 U.S. 398, 401, 414 n.5 (2013)).  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  <u>Lyons</u>, 461 U.S. at 102.

"[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" required to establish standing. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). In addition, pro se pleadings are held to "less demanding standards than those drafted by lawyers" and are read liberally on a motion to dismiss. Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000). However, pro se plaintiffs must follow procedural rules and "dismissal remains appropriate when the court lacks jurisdiction" or "when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citing Lefebvre v. Comm'r Internal Revenue, 830 F.2d 417, 419 (1st Cir. 1987)).

## III. APPLICATION

Davis' amended complaint alleges that the City of Worcester and the individual Defendants violated his rights because "as a Black person [he] is at greater risk of being arrested than other Protected classes," "[t]he potential of increased risk of arrest is emotionally distressing," and "arrests are traumatic and costly to defend." Docket # 14 at 5. Davis asks this Court to enjoin the City from "continuing to use its Systematically Racist police policy and practices" and to order the City "to investigate by all means, including public hearings, the causes of the disproportional arrests of Black and Latino people by the Worcester police" and to establish "a policy and practice . . . that ends the Civil Rights violations." Id. at 7. He also asks the Court to fine Defendants Batista, Traynor, and Toomey $500.00 and enjoin them "from blocking or delaying the investigation and correction of the civil rights violations." Id. Therefore, Davis seeks exclusively injunctive relief from the City and both injunctive relief and fines against the individual Defendants.

### a. Standing to Obtain Injunctive Relief

As discussed below, Davis fails to plead an injury in fact and redressability; hence, he lacks standing to obtain an injunction.

       1.  Injury in Fact

Davis' allegedly unlawful arrest referred to in his standing motion, Docket # 16 at ¶ 5, is not sufficient to establish standing for injunctive relief.  See Lyons, 461 U.S. at 103 ("past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.").  Borrowing from both the language and reasoning of Lyons, that Davis may have been illegally stopped by police on a prior occasion "does nothing to establish a real and immediate threat that he would again be stopped . . . for any [ ] offense, by an officer or officers." Id. at 105.  Rather, to establish an actual case or controversy, Davis would have to allege not only that he would again encounter WPD officers, but also "the incredible assertion either, (1) that all [WPD] police officers … always [arrest without probable cause] any [Black] citizen with whom they happen to have an encounter . . . or, (2) that the City [of Worcester] ordered or authorized police officers to act in such manner." See id. at 105-06 (emphasis in original).  The amended complaint lacks either allegation.

Davis also alleges that he "is at greater risk of being arrested" because he is Black and this "increased risk of arrest is emotionally distressing" and "arrests are traumatic and costly to defend." Docket # 14 at 5.  The Court accepts allegations that Davis experiences emotional distress; however, these allegations do not show that Davis "is in real and immediate danger of sustaining future, direct injury as a result of official conduct"—the requisite showing to establish standing to seek injunctive relief.  Mack v. Suffolk County, 191 F.R.D. 16, 19 (D. Mass. 2000) (citing Lyons, 461 U.S. at 102).  When considering whether a plaintiff has standing to bring a claim for injunctive relief a court considers "the reality of the threat of repeated injury . . . not the

plaintiff's subjective apprehensions.  The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant."  Lyons, 461 U.S. at 107 n.8 (emphasis in original).  Indeed, Davis' distress from the mere possibility of police misconduct—unfortunate as it may be—sheds no light on the likelihood of such misconduct.  Instead, Davis' simply alleges that he "'could be' subjected in the future to the effects of . . . illegal conduct by [the WPD]."  Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (quoting Golden v. Zwickler, 394 U.S. 103, 109 (1969)).  Controlling caselaw makes clear that such allegations are not sufficient to demonstrate the substantial and immediate injury necessary to find a plaintiff has standing for injunctive relief.  See id.

For instance, in Asociacion De Periodistas De Puerto Rico v. Mueller, 680 F.3d 70, 72 (1st Cir. 2012), media plaintiffs who had covered the actions of FBI agents executing a search warrant at an apartment allegedly associated with domestic terrorists sued the FBI, alleging agents used excessive force and seeking injunctive relief.  During the search, a crowd formed and eventually FBI agents used pepper spray and force to disperse the crowd, including the media plaintiffs.  Id. at 75.  The media plaintiffs moved to enjoin the FBI from using like force in the future and to develop policies which ensured that the media may report on future FBI raids "free from unwarranted attacks and other interferences from the FBI."  Id. at 84.  The First Circuit found the media plaintiffs lacked standing to pursue injunctive relief where, despite allegations of harm previously caused by unlawful government conduct, their "subjective fears" of future harm were "generic, speculative, and fail to demonstrate a 'real and immediate threat' of likely future violations."  Id. at 85.  It was not enough, the Court further noted, that the media

plaintiffs expected to cover future FBI activities because plaintiffs had not shown that "repetition was likely." Id. at 84-85.

Indeed, in Kerin v. Titeflex Corp., 770 F.3d 978, 979-80 (1st Cir. 2014), a plaintiff in a product liability suit argued he had standing to seek injunctive relief because his exposure to defendant's allegedly defective product—steel tubing that was purportedly vulnerable after lightning strikes—resulted in his being subject to an increased risk of harm, namely a potential fire at his home following a lightning strike. The Court of Appeals held that the plaintiff did not have standing to sue for injunctive relief because he "fail[ed] to allege [ ] facts sufficient to assess the probability of future injury." Id. at 979. The Court counseled that cases involving standing claims based on future risk "require caution" because "were all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot, because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of future injury.'" Id. at 982-83 (quoting Ctr. For Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1161 (D.C. Cir. 2005)).

Here, the Court appreciates that an unlawful arrest may harm Davis; however, like in Kerin, Davis has not "allege[d] facts sufficient to even calculate or estimate the risk" of an unlawful arrest. Id. at 983. Davis' standing depends entirely on the supposition that some day he is going to engage with WPD—Asociacion teaches that the fact of a future interaction with law enforcement is not enough—and that during such encounter, WPD is going to unlawfully arrest Davis because he is Black. While Davis has alleged that the audit results show that the WPD has disproportionately arrested people who are Black and Latino and that even he was once previously unlawfully arrested, Davis does not provide any support that an unlawful arrest is "certainly impending" or that "there is a substantial risk [it] will occur." Reddy v. Foster, 845

F.3d 493, 500 (1st Cir. 2017). That Davis has made no such showing and relies exclusively on the audit's conclusion that the WPD "disproportionately arrest people who are Black or Latino" is fatal to his motion for standing. Docket # 14, Ex. A.[4] In the absence of allegations to aid the court in determining the increased risk of unlawful arrest Davis faces and whether such risk is certainly impending or substantial, Davis' claim is purely speculative.

Further, from Davis' allegations it could be suggested that the isolated instance of his unlawful arrest (on an unknown date) cuts against an argument that a future unlawful arrest is immediate or substantially likely to occur. See Lyons, 461 U.S. at 105 (noting that five months had elapsed between the Lyons' arrest and the filing of the complaint without a further police encounter). Davis has not alleged he has been subject to multiple unlawful arrests by WPD officers or any other facts suggesting he, personally, has been targeted by WPD. While any unlawful arrest seriously infringes on an individual's rights, where such conduct has occurred, an individual may file a suit for damages caused by that unlawful conduct. Davis must allege more to establish standing for injunctive relief.

As in Lyons, Davis has not shown that he is "more entitled to an injunction than any other" Black resident of Worcester, and "a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." 461 U.S. at 111.

In his standing motion Davis also argues that Defendants Toomey and Traynor violated section 1983 by refusing to submit Davis' petitions to the City Council and tabling one of the

---

[4] Ordinarily, in ruling on a motion to dismiss, "a court may not consider any documents that are outside the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). However, an exception exists "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. Defendants do not appear to dispute the authenticity of the article cited at Davis' Exhibit A, see Docket # 18 at 3, and the Court may consider this exhibit.

petitions.[5]  Docket # 16 at ¶¶ 9-13.  Davis alleges that this conduct caused Davis "real harm" and that further violations of section 1983 are "imminent as Davis is planning to follow-up with his petition at City Council."  Id. at ¶¶ 9, 12-13.  Davis does not elaborate on the harm caused to him.  To the extent the harm he alleges is his generic fear of being wrongfully arrested, as discussed, this is insufficient to establish standing for injunctive relief.  And Davis has not alleged how the individual Defendants' conduct in response to his petitions deprives him of any right secured by the Constitution or federal law, let alone an immediate and real harm warranting injunctive relief.[6]  To the extent he intends to state a claim for violation of his First Amendment rights, as discussed further below, he cannot receive the redress he seeks.

> 2. Redressability

While the Court finds that Davis has not established an injury in fact, and it need not consider the additional requirements of standing, even if Davis had established injury sufficient for injunctive relief, he has not shown that his injury would be redressed following a decision in his favor based on the relief he seeks.  To remedy his alleged injury Davis seeks an injunction prohibiting the City from disproportionately arresting Black and Latino residents, requiring it investigate the causes of disproportionate arrest practices of the WPD, and establishing a policy or practice that ends the Civil Rights violations.  Docket # 14 at 7.  He also asks the Court to enjoin the individual Defendants from blocking or delaying the City's investigation and

---

[5] Davis does not allege that the individual Defendants violated section 1983 in the amended complaint, and thus these allegations are not properly before the Court.  In any event, concluding that Davis does not have standing to seek injunctive relief against the individual Defendants, the Court will not consider whether Davis stated a section 1983 claim against these Defendants.

[6] Davis is reminded that section 1983 provides "a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law."  3137, LLC v. Town of Harwich, 126 F.4th 1, 8 (1st Cir. 2025) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011)).  Therefore, to successfully plead a section 1983 claim, a plaintiff must allege both "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States."  Id. (quoting Finamore v. Miglionico, 15 F.4th 52, 58 (1st Cir. 2012)).

implementation of a policy.  Id.  However, Davis is not entitled to, and this Court is unable to grant, the relief he seeks.  While Davis has a First Amendment right to petition the government, there is no "affirmative obligation on the government to listen [or] to respond."  See Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979).  This conclusion is bolstered by federal courts' recognition of "the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."  Lyons, 461 U.S. at 112.

The Court therefore finds that Davis does not have standing to seek injunctive relief against the City or the individual Defendants.  His section 1983 claim against the City is dismissed on this basis, as are his claims against the individual Defendants insofar as they seek injunctive relief.

### b.  Standing to Seek Relief Pursuant to 18 U.S.C. § 242

Davis also asks this Court to impose fines upon the individual Defendants for violating 18 U.S.C. § 242.[7]  Section 242 is a criminal statute, which does not provide a private right of action and which Davis is without authority to prosecute.  Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under" 18 U.S.C. § 242). To the extent Davis does intend to bring a claim pursuant to 18 U.S.C. § 24, which provides definitions relating to federal health care offenses and health care benefit program, Davis, as a private individual, does not have standing to bring a cause of action under this criminal statute either.  See Cok, 876 F.2d at 2; Mugabo v. Wagner, 22-cv-930, 2024 WL 1621534, at *3 (W.D.N.Y. Apr. 15, 2024) (discussing section 24); DeLeon v. Teamsters Local 406, 22-cv-903, 2023 WL 7419202, at *3 (W.D. Mich. Oct. 16, 2023) (same).

---

[7] See footnote 3, supra.

11

## IV. CONCLUSION

For the reasons stated herein, the Defendants' motion to dismiss is GRANTED and Davis' motion to grant <u>locus</u> <u>standi</u> is DENIED. Davis' complaint is dismissed without prejudice.

<u>/s/ David H. Hennessy</u>
David H. Hennessy
United States Magistrate Judge